UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**ULYSSES S.G. DAVIS III**                                                      **PLAINTIFF**

**v.**                                     **CIVIL ACTION NO. 4:05CV-P173-M**

**ANGELA BARD** *et al.*                                          **DEFENDANTS**

**MEMORANDUM OPINION**

Plaintiff Ulysses S.G. Davis III filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and various other federal and state laws. This matter is before the Court for *sua sponte* screening of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the Court will dismiss a portion of the complaint and allow the remaining claims to proceed beyond initial screening.

**I.**

Plaintiff is currently incarcerated at the Kentucky State Penitentiary ("KSP"). He brings this action against 34 named Defendants. These Defendants include Kentucky Department of Corrections ("KDOC") Commissioner John Rees and Ombudsman Janet Conover, as well as various officers and employees of the Green River Correctional Complex ("GRCC") and KSP.

The GRCC Defendants include Angela Bard, CTO Supervisor; Jim Acquaviva, CTO II; Harold Radford, Warden of Programs; Pattie R. Webb, Warden; Louis Korfhage, Warden of Security; Ron Beck, Grievance Coordinator; Shawn Mason, Director of the Special Management Unit ("SMU"); Judy Durall, CTO SMU; Joel Elliot and Charles Bastings, SMU Security Supervisors; Gary Hayes, Assistant Director of SMU; Rick Williams, Director of SMU; Annie Page, Librarian and Copy Authority; Lieutenant Peggy Penrose, SMU Supervisor; Vanessa Dortch, Mailroom Supervisor; Steve Ford, Internal Affairs Officer; and Shauna Nelson, Secretary and Grievance Clerk.

The KSP Defendants include Charles Roberts, Security Officer and Law Library Operator; Pattie Treat, Assistant Program Director; Nancy Doom, Warden of Programs; Glenn Haeberlin, former Warden; Thomas L. Simpson, Warden; Rick Pershing, Warden of Security; Bobby Waller and Joel Dunlap, Directors of SMU; Rocky Roberts, CTO/UAI; John Gibbs, Acting Grievance Coordinator; Harry Wishman, Mailroom Supervisor; Tammy Smith, Mailroom Clerk; and Will Thomas, Internal Affairs.

Additionally as Defendants, Plaintiff names Ginger R. Massamore, Directing Attorney for the Department of Public Advocacy ("D.P.A."), and Erwin W. Lewis, Head of D.P.A. for the State of Kentucky. He also sues Unknown D.P.A. Heads; Unknown Mailroom Personnel at GRCC and KSP who interfered with his access to courts; Unknown Security and Medical Staff that interfered with his access to courts; and "Unknown K.D.O.C." who interfered with his access to courts by way of wrongful convictions, denied grievance processing, wrongful classification, and placement in segregation.

Plaintiff sues each Defendant in his or her individual and official capacities and seeks $80 million in compensatory and punitive damages and various forms of injunctive relief, including (1) release from segregation at KSP and placement in the general population; (2) removal of all grievance restrictions; (3) replacement of all property lost; and (4) creation of satellite law libraries in SMU.

Plaintiff seeks relief under 42 U.S.C. § 1983 for the alleged denial of various constitutional rights. He additionally alleges a violation of 42 U.S.C. § 1985(2) and (3). He finally alleges that Defendants violated his rights under 42 U.S.C. §§ 1791, 1884, 1866, 1868, 1871, 1875, 1876, 1970, 1977, 1979, 1978, 1980, 1981, 1982, 1986, and 1988(1), under 18 U.S.C. §§ 241, 242, and under Sections 1 through 17 of the Kentucky Constitution.

## II.

Under 28 U.S.C. § 1915A, this Court must review the instant action. 28 U.S.C. § 1915A ("The court shall review, . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."); *McGore v. Wrigglesworth*, 114 F.3d 601, 604-05 (6th Cir. 1997). Upon review, this Court must dismiss "the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b).

A complaint may be dismissed as frivolous under § 1915A if it is premised on a nonexistent legal interest or delusional factual scenario. *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). In reviewing a complaint under this standard, the Court must accept all factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "the duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for

the plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975); *see also* Fed. R. Civ. P. 8(a)(2).  To command otherwise would require this Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

#### A.  18 U.S.C. §§ 241 and 242

Sections 241 and 242 of Title 18 of the United States Code are criminal statutes which impose punishment by fine or imprisonment for the deprivation of certain federal rights, privileges or immunities.  These statutes do not give rise to any private civil cause of action.  *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Leach v. Manning*, 105 F. Supp. 2d 707, 717 (E.D. Mich. 2000).  Consequently, the claims arising under 18 U.S.C. §§ 241 and 242 must be dismissed.

#### B.  42 U.S.C. §§ 1791, 1866, 1868, 1871, 1875, 1876, 1884, 1970, 1977, 1978, 1979, 1980, and 1988(1)

Plaintiff's claims arising under these various statutes must also be dismissed.  Sections 1970, 1977, 1978, and 1979 do not exist, and section 1980 contains no legislation but is a section of the Civil Rights Commission chapter specifically "reserved for future legislation."  As to section 1791, that statute is the "Bill Emerson Good Samaritan Food Donation Act" and clearly has no applicability to the instant case.

Sections 1866, 1868, 1876, and 1884 are contained in Chapter 16 which establishes and governs the National Science Foundation ("NSF").  Section 1866 establishes divisions within the NSF, section 1868 allows for the establishment of special commissions, section 1871 addresses the

4

disposition of inventions, section 1875 pertains to appropriations, and sections 1876 and 1884 are repealed statutes. As these statutes provide for no cause of action under which Plaintiff may seek relief, any claims asserted thereunder must be dismissed.

Plaintiff also cites 42 U.S.C. § 1988(1) as a basis for this action. This statutory provision, however, does not create an independent cause of action. *Moor v. County of Alameda*, 411 U.S. 693, 702 (1973); *Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974); *Otto v. Somers*, 332 F.2d 697, 699 (6th Cir. 1964). Rather, section "1988 proceeds to authorize federal courts, where federal law is unsuited or insufficient 'to furnish suitable remedies,' to look to principles of the common law, as altered by state law, so long as such principles are not inconsistent with the Constitution and laws of the United States." *Moor*, 411 U.S. at 702-03. For example, because § 1983 does not provide for the right of survivorship, the Sixth Circuit in *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974), "adopt[ed] as federal common law, the law of Kentucky, the forum state, which provides for the survival of actions for personal injury." *Id.* at 569. Plaintiff has wholly failed to demonstrate § 1988's applicability to his case, and as such, that claim will be dismissed.

### C. **42 U.S.C. § 1981**

Section 1981(a) of Title 42 of the United States Code states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The statute has been construed as a prohibition against certain forms of racial discrimination. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 608-10 (1987). The elements of a claim under § 1981 are: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the

5

basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e. make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

Plaintiff mentions race on only a few occasions in the complaint. On one occasion, Plaintiff claims that Defendants conspired to deny him "access to courts out of retaliation for incident that occurred at GRCC 7/18/04. And Due to the fact th[at] the Plaintiff is African-Indian-American and Muslim who practices Al-Islam and fights for his civil and constitutional rights to be free of the totality of abuse by these officials." Plaintiff provides no facts surrounding this broad and conclusory allegation, and he fails to demonstrate how this alleged retaliation falls within the ambit of § 1981.

On the other occasions in the complaint where race is referenced, Plaintiff makes only broad and conclusory allegations with respect to race. For example, Plaintiff claims that Defendants have "intentionally racially [] used class based discriminatory practices against the Plaintiff as well as selective discrimination." He provides no other information as to what discriminatory practices have been used, by whom, and when. Because conclusory allegations are insufficient to establish a cause of action under § 1981, that claim will be dismissed.

### D. 42 U.S.C. § 1982

Section 1982 protects the property rights of citizens and provides that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Section 1982 was designed to prohibit all racial discrimination, whether or not under color of law, with respect to the purchase and sale of property. *United States v. Brown*, 49 F.3d 1162, 1166 (6th

Cir. 1995) ("Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment, specifically to 'prohibit all racial discrimination, private and public, in the sale and rental of property.'") (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968)).

There is nothing in the complaint that would indicate that Plaintiff's allegations relate to Defendants' frustrating his attempts to purchase or lease property. Accordingly, the Court will dismiss this claim.

### E. 42 U.S.C. § 1983

#### 1. Official capacity claims for damages

The official capacity claims for damages will be dismissed on two bases. First, Defendants, as state officials and employees sued in their official capacities for damages, are absolutely immune from § 1983 liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, Defendants are not "persons" subject to suit within the meaning of § 1983 when sued in their official capacities for monetary damages. *Id.* (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) (same). Consequently, the § 1983 official capacity claims for damages against all Defendants must be dismissed.

#### 2. Access to courts

Plaintiff's primary complaint is that Defendants conspired to deny him access to courts at both GRCC and KSP. He contends that Defendants directly and indirectly caused him serious harm and personal injury as follows:

>By conspiring and directing and knowingly giving their authority to allow their subordinates to work in concert to conspire to deny the Plaintiff (1). unimpeded access to the outside courts. (2). Unimpeded access to Government officials who would investigate their wrong doings. As well as organizations. (3). Unimpeded access to adequate Legal Book access. (4) unimpeded access to a paralegals trained in law, civil, and criminal. (5) Unimpeded access to Law Library from SMU facility. (6) Unimpeded supplies and copier access. (7) Unimpeded access to inmate legal aides. (8). Unimpeded access to records when information is requested by the Courts or Small Claims Courts or Boards. (9) unimpeded access to meaningful Legal Materials. (10) Unimpeded access to Judicial Relief.

Plaintiff further claims that legal aides are nothing more than legal librarians, are not paralegals, and cannot properly assist inmates in filing meaningful complaints. "In fact," claims Plaintiff, Defendants "Ginger R. Massamore, and Erwin W. Lewis, [are] aware that inmates who take Department of Public Advocacy [DPA] course can not properly file legal complaints nor do the[y] know the proper procedures for civil and criminal complaints." According to Plaintiff, the DPA is "not teaching how to win. They barely teach the core basics. . . . The DPA operation is a sham."

Plaintiff reports that he attempted to file motions in Muhlenberg Circuit Court on pending third-degree assault charges but was denied adequate materials, equipment, book access, and assistance from a trained paralegal. He claims that he could not get into his personal property box for legal materials until October 2004, and that by that time, he "was totally Blind, and defenseless."

Plaintiff then reports that Defendants prevented him "from filing complaints to organizations including Kentucky State government officials for redress of his grievances." More specifically, Plaintiff claims that he wanted to send complaints to Lieutenant Governor Stephen Pence, the Department of Justice, the ACLU, and the FBI. Plaintiff sent these complaints to be copied. Defendants Treat, Doom and Charles Roberts, after having read the complaints, decided

8

not to copy them because they were not "legal" documents. Plaintiff contends that the complaints were "legal" and that he was entitled to have them copied because he was indigent. He further alleges that he must file a grievance prior to filing in federal court and that these complaints were effectively grievances against Lieutenant Governor Pence and his law enforcement officials.

Although the next claim is somewhat sketchy, Plaintiff appears to allege that his property was confiscated without notice while he was incarcerated at GRCC and that his property has yet to be returned to him. As a result of this deprivation of property, it appears that Plaintiff filed a claim with the Kentucky Board of Claims. Plaintiff reports that the case was ultimately dismissed seemingly because Defendants Doom and Rocky Roberts would not give him access to his property box to get information needed for an impending deadline and because Defendant Rocky Roberts failed to timely mail a response to the Board.

Courts have repeatedly recognized the constitutionally protected right of meaningful access to the courts. However, meaningful access will vary with the circumstances, and officials are to be accorded discretion in determining how that right is to be administered. *Bounds v. Smith*, 430 U.S. 817, 830-31 (1977); *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992). The right of access guarantees access to the courts and not to a prison library. *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate who claims his access to the courts was denied *merely* because he was denied access to the prison library, or certain books, fails to state a claim. *Id.* Rather, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, a plaintiff must demonstrate an actual injury. *Id.* He must show, "for example, that the inadequacy of the prison law library or the available legal

assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Lewis*, 518 U.S. at 356 (advising that no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented").

Although Plaintiff reports attempting to file motions in a criminal action, he fails to demonstrate an actual injury. He fails to explain how his inability to file motions hindered or otherwise affected his criminal action and fails even to advise whether he was convicted. More fundamentally, however, he fails to name any Defendants associated with that claim.

With respect to Plaintiff's claim that he was unable to file complaints with Lieutenant Governor Pence, the Department of Justice, the ACLU, and the FBI, Plaintiff only claims that corrections officials would not make copies of the complaints for him, not that they would not mail the complaints for him. Additionally, he fails to describe with any specificity the content of the complaints. He thus fails to demonstrate that any non-frivolous claim was hindered. Finally, the administrative complaints to those organizations are not the type of complaints covered by the constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999).

As to Plaintiff's claim that his right to access courts was violated when his Board of Claims action was dismissed, the Court will permit that claim to continue against Defendants Doom and Rocky Roberts in their individual capacities for damages.

### 3. No meaningful grievance procedure

Plaintiff alleges that there is no meaningful grievance procedure at either GRCC or KSP. He claims that his grievances are lost, are not answered, or are never filed, and that he was placed on a grievance restriction at GRCC and is currently on a grievance restriction at KSP. Because the

filing of a grievance is the first step in filing a claim in federal court, argues Plaintiff, he has been effectively denied access to courts. As an initial matter, the Court notes that under 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted." (emphasis added). If a prison official is prohibiting an inmate, through no fault of the inmate, from completing the grievance process, the grievance process is no longer *available* as contemplated under § 1997e(a), and there is no barrier to filing suit in federal court. An inmate must, however, explain this unavailability of the administrative remedies in his complaint.

Having clarified that § 1997e(a) requires only the exhaustion of *available* administrative remedies, the Court concludes that Plaintiff fails to demonstrate any constitutional violation as a result of the allegedly inadequate grievance processes at KSP and GRCC. First, Plaintiff has failed to demonstrate that he was denied access to courts as a result of the allegedly faulty grievance mechanism. He does mention that in a prior federal court action, one of his claims (denial of a religious diet) was dismissed for lack of exhaustion of administrative remedies. *See Davis v. Williams*, Civil Action No. 3:00CV-532-C. Review of that prior action, however, reveals that the denied religious diet claim was not dismissed as a result of any action or inaction on the part of any KDOC officer or employee involved in the grievance process. Rather, the denied religious diet claim was dismissed by Plaintiff's own failure to meet his burden of demonstrating complete exhaustion prior to filing suit in federal court. *See Davis v. Williams*, DN 54 (Sixth Circuit Order Affirming District Court) ("Davis did not submit any document showing that any of the grievances he submitted were pursued through the final stage of the grievance process prior to

11

his filing the [] complaint on September 1, 2000."). For these reasons, Plaintiff has failed to demonstrate that he was denied access to courts as a result of the grievance processes at GRCC and KSP.

Second, as to any Fourteenth Amendment due process claim Plaintiff may be asserting, prison inmates do not have a constitutionally protected right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 138 (1977) (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Walker v. Mich. Dep't of Corr.*, 128 Fed. Appx. 441, 2005 WL 742743, at *3 (6th Cir. Apr. 1, 2005) ("All circuits to consider this issue have also found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."). And if prisoners do not possess a constitutional right to a grievance procedure, then they certainly do not have a claim premised on an ineffective procedure. *LaFlame v. Montgomery County Sheriff's Dep't.*, No. 00-5646, 2001 WL 111636, at *2 (6th Cir. Jan. 31, 2001) (holding that inmate "cannot premise a § 1983 claim on allegations that the jail's grievance procedure was inadequate because there is no inherent constitutional right to an effective prison grievance procedure") (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996)); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (holding that if the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right). Therefore, a failure to follow the grievance procedures does not give rise to a § 1983 claim. *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Because Plaintiff has failed to establish a Fourteenth Amendment due process violation stemming from the grievance process, that claim must also be dismissed for failure to state a claim upon which relief may be granted.

### 4. Confiscation of property

In the complaint, Plaintiff broadly claims that GRCC and KSP officers have stolen his property. This broad allegation without more fails to state a claim upon which relief may be granted. In an attached grievance, Plaintiff states that on December 10, 2004, his personal property was confiscated by GRCC officials and has yet to be returned. This allegation is also too sketchy to state a claim upon which relief may be granted. Plaintiff again fails to identify any Defendant who engaged in the purportedly wrongful conduct and fails to specify what property was confiscated. This claim will be dismissed.

### 5. Excessive Force

Plaintiff claims that KSP Defendants Treat, Charles Roberts, Rocky Roberts, Waller, Doom, Gibbs, Haeberlin, Pershing, Wishman, Dunlap and Thomas conspired with security staff to have Plaintiff murdered in his sleep by a racist inmate, Chad Schmidt. According to Plaintiff, on May 10, 2005, security staff opened his cell while he was sleeping, cut all the lights in the cell block, killed the power to two cameras, and allowed Inmate Schmidt to enter Plaintiff's cell with a shank to kill him.

On preliminary consideration, the Court will allow that Eighth Amendment claim to proceed past initial screening against Defendants Treat, Charles Roberts, Rocky Roberts, Waller, Doom, Gibbs, Haeberlin, Pershing, Wishman, Dunlap and Thomas in their individual capacities for damages.

### 6. Mail Tampering

According to Plaintiff, Defendants Korfhage and Penrose removed all of his personal and legal mail, and Defendant Penrose tampered with incoming and outgoing legal responses attempted by Plaintiff from November 19, 2004, until his transfer to KSP on December 10, 2004.

Defendant Dortch allowed the tampering to occur. The Court will permit these claims to proceed against Defendants Korfhage, Penrose, and Dortch in their individual capacities for damages.

### 7. Miscellaneous Claims

As mentioned earlier in this opinion, Plaintiff claims that Defendants conspired to deny him "access to courts out of retaliation for incident that occurred at GRCC 7/18/04. And Due to the fact th[at] the Plaintiff is African-Indian-American and Muslim who practices Al-Islam and fights for his civil and constitutional rights to be free of the totality of abuse by these officials."

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The "incident that occurred at GRCC 7/18/04" clearly is not protected conduct. While Plaintiff has a constitutional right to practice his religion, there is utterly no causal connection between this protected conduct and the adverse action broadly styled as a denial of access to courts. For these reasons, any retaliation claim must be dismissed.

Plaintiff additionally claims that "The Defendants in their authority and supervisory positions. Have intentionally deprived the Plaintiff of his secure rights by the U.S. Constitution and laws, as well as those secured by civil rights laws. And the agency of the K.D.O.C." He also claims that Defendants were "working in concert [to] conspire[] against the Plaintiff to deprive him of his protected rights." He claims that Defendants inflicted cruel and unusual punishment by placing him in solitary confinement for long periods of time without fair due process of law. Additionally, contends Plaintiff, Defendants have "intentionally racially [] used class based

discriminatory practices against the Plaintiff as well as selective discrimination"; have "disregarded Plaintiff's Rights to practice his religion, according to his beliefs"; and "used excessive force against him because he refused to work on a Sunday."

Again Plaintiff proffers no specific facts related to these broad and conclusory allegations, and he fails to identify a specific Defendant who allegedly engaged in these acts. In order to assert a cognizable § 1983 claim, a plaintiff must allege specific facts. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Id.* Allegations premised upon mere conclusions and opinions, such as those advanced by Plaintiff, fail to state an adequate claim. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983) (finding that bare and conclusory allegations that a defendant personally deprived a plaintiff of constitutional or statutory rights are insufficient to state a cognizable claim). These broad claims must therefore be dismissed.

### F.  42 U.S.C. § 1985 and § 1986

Plaintiff alleges a violation of 42 U.S.C. § 1985(2), claiming that Defendants "conspired to obstruct the plaintiff from the due course of justice." He further claims that Defendants violated § 1985(3) by "conspir[ing] for the purpose of depriving [him] because of his class of person and his condition and denying him equal protection of the laws and equal privileges and immunities under the laws."

These two subsections contain "language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *See Kush v.*

*Rutledge*, 460 U.S. 719, 725 (1983). Plaintiff's broad and conclusory allegations of selective discrimination and denied equal protection, without any facts surrounding these allegations, fail to demonstrate a viable § 1985 conspiracy claim. *See Ashiegbu v. Purviance*, 76 F. Supp. 2d 824, 830 (S.D. Ohio 1998) ("Under § 1985, a plaintiff must plead his civil rights conspiracy charge with factual specificity; mere conclusory allegations will not survive a motion to dismiss."); *Saunders v. Ghee*, No. 94-4073, 1995 WL 101289, at *1 (6th Cir. 1995) ("Conspiracy claims under § 1985(3) must be pleaded with the same specificity as conspiracy claims under § 1983.") (citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984)). The § 1985 claims will thus be dismissed for failure to state a claim upon which relief may be granted.

A cause of action under § 1986 is based on the violation of § 1985. *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (explaining that a "§ 1986 claim is derivative and conditioned on establishing a § 1985 violation"). As this Court has concluded that there is no violation under § 1985, the § 1986 claim fails and must also be dismissed.

### G. Sections 1 through 17 of the Kentucky Constitution

As with most of the federal statutes cited in his complaint, Plaintiff simply claims that Sections 1 through 17 of the Kentucky Constitution were violated. Aside from this broad conclusion, he fails to demonstrate the applicability of any specific section of the state constitution to his numerous factual allegations. Due to the lack of specificity as to how each section was violated and by whom, the state-law claims will be dismissed without prejudice. Plaintiff may seek leave to amend the complaint to offer a greater description of how specific sections of the Kentucky Constitution are applicable to his case, but as the complaint is currently crafted, these state-law claims cannot stand.

       The Court will enter Orders consistent with this Memorandum Opinion.

Date:

cc:     Plaintiff, *pro se*
       Defendants
       General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel

4414.005